Filed 7/14/22  S.D. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| S.D.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F084249<br><br>(Super. Ct. Nos. 21CEJ300165-1, 21CEJ300165-2, 21CEJ300165-3)<br><br><br>**OPINION** |

### THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Kimberly Nystrom-Geist, Judge.

S.D., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*        Before Poochigian, Acting P. J., Peña, J. and Meehan, J.

Petitioner S.D. (mother) seeks an extraordinary writ from the juvenile court's dispositional orders denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(6)[1] (severe physical harm) as to her six-year-old daughter, Brooklyn D., three-year-old son, B.D., and 21-month-old daughter, L.D., and setting a section 366.26 hearing for August 4, 2022. Mother asks this court to vacate the section 366.26 hearing and order reunification services or return the children to her custody and terminate dependency jurisdiction. We conclude mother's writ petition fails to comply with the content requirements of California Rules of Court, rule 8.452[2] and dismiss it as facially inadequate for review.

## PROCEDURAL AND FACTUAL SUMMARY

In May 2021, the Fresno County Department of Social Services (department) took then five-year-old Brooklyn, two-year-old B.D. and seven-month-old L.D. into protective custody out of concern for their physical safety.

Mother has a significant history of physically abusing her children. In 2005, mother hit her then eight-year-old daughter, L.A., with a stick and belt and held her on the stove causing bruises and blisters. L.A. was admitted to the hospital. Coached by mother, L.A. accused her father of injuring her but later recanted and said mother did it. Mother was arrested, convicted for the abuse, and served seven years in prison. In 2017 and 2019, the department began to receive referrals mother exposed Brooklyn to domestic violence. In late 2019, Tulare County received reports of mother punching her teenage daughter, M.G., in the face and back, throwing her to the floor, pulling out chunks of her hair and hitting her in the head, causing her to lose consciousness. She was placed with her stepfather. In 2020, the department responded to a report that Brooklyn had a large bump and scratches on the right side of her forehead. Brooklyn stated several

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     Rule references are to the California Rules of Court.

times, " 'Mommy pow-pow'd me!' " and pointed to her head and butt. She said she was hit for peeing in her bed.

In April 2021, mother posted on her social media that she was going to give Brooklyn up for adoption if she woke her up again. Mother said she was just venting and blamed her grandmother, Marina, for calling in the referral. She said Marina babysat her children in March 2020 but hit them and was not allowed to see them. On April 15, 2021, Marina provided social worker Nancy Villegas four pictures depicting bruising on Brooklyn's buttocks and the back of her thighs in various shapes and degrees of redness. Some were dark purple. Marina said the pictures were taken in mid-February 2020 but law enforcement was not contacted. She denied striking Brooklyn and said mother " 'always coaches Brooklyn.' " Upon seeing the pictures, mother gasped and cried and said she knew Marina did it. Brooklyn said her "nana" hit her and she felt safe with mother.

On April 21, 2021, M.G. contacted Villegas with concerns about her siblings' safety. She recounted two incidents that occurred while she lived with mother from August to November 2019. Mother was taking her to school and Brooklyn was in the car in her car seat. Mother became annoyed because Brooklyn kept asking where they were going. Mother had M.G. take Brooklyn out of her car seat and place her on a tree stump. Mother drove away and then returned and placed Brooklyn back in the car. She scolded Brooklyn and told her if she did not stop asking where they were going, Brooklyn would be left behind. When she asked Brooklyn if she understood, she shook her head indicating that she did. On another occasion, mother nearly tripped over a television cord because M.G. had moved a dog bed by the television. Mother woke her up, shook her and punched her in the nose. She made M.G. go out into the cold and take off her clothes and stand. She then allowed her to put her clothes back on, but made her run up and down the alley. By then, it was morning. M.G. had not seen mother or the children for a while and did not know of any recent incidents of abuse. However, the family had

reported to her what was going on with Brooklyn and she felt compelled to speak up. She was afraid of mother and did not know what she would do.

The department filed a dependency petition on the children's behalf, alleging they were at a substantial risk of suffering serious physical harm by mother as described under section 300, subdivisions (a) (serious physical harm) and (b)(1) (failure to protect). As factual support, the department cited the injuries sustained by L.A. and Brooklyn. No allegations were made as to the children's biological father, E.D. (father).

The juvenile court ordered the children detained and offered mother parenting classes, mental health and domestic violence evaluations and any recommended treatment. The court ordered reasonable twice weekly supervised visitation for the parents and set the jurisdiction/disposition hearing (combined hearing) for July 1, 2021. The hearing was continued to November 17, 2021.

In its jurisdiction/disposition report, the department recommended the juvenile court provide mother reunification services, even though Brooklyn disclosed to social worker Jessica Camarillo on June 21, 2021, that it was mother not Marina who injured her. Mother told her not to tell anyone. Brooklyn continued to disclose significant new details about the abuse in therapy and of sexual abuse by her father. She told her foster mother her father touched her " 'butterfly' " and showed her his " 'caterpillar.' " When she told mother about it, mother hit her for " 'lying.' " The department recommended the juvenile court deny father reunification services because he was a registered sex offender. (§ 361.5, subd. (b)(16).)

A family reunification panel was conducted with mother to determine if it would be in the children's best interests for her to receive reunification services. When mother was asked about Brooklyn's disclosures, she said she "probably … left bruises on Brooklyn in the past," but was not responsible for the injuries that preceded her removal.

The department changed its recommendation in an addendum report, recommending the juvenile court deny mother reunification services under section 361.5,

4.

subdivision (b)(6). It reported, "Brooklyn has consistently reported egregious abuse and neglect by her parents in sessions. Brooklyn has made it clear she does not feel safe with her parents and does not want to return to their care. Brooklyn continues to express fear and worrying due to her trauma. Brooklyn is making progress in decreasing distress and other trauma symptoms with her current caregiver, through the use of attachment and trauma informed treatment."

At the November 17, 2021, contested combined hearing, mother asked to call five-year-old Brooklyn to testify. The juvenile court ordered mother's attorney to submit prepared questions to minor's counsel for review prior to her testifying and continued the hearing to December 20, 2021.

The contested combined hearing was conducted on December 20, 2021, and February 18, 2022. Brooklyn testified she did not like living with mother because she hit her and her sister. Mother and Marina hit her but "grandma hits soft and [mother] hits hard." She also testified mother whispered in her ear during an in-person visit that she would not get any toys if she " 'talked to you guys.' " She did not miss her mother because mother hit her and she did not want to live with her because she was mean.

Camarillo testified mother completed a parenting class and was participating in mental health services and in a child abuse prevention program. She was also regularly and consistently participating in visits but had not progressed beyond supervised visits. For that reason, Camarillo rated her overall progress as moderate.

Mother testified Brooklyn was in her care in February 2021 but was also with Marina from January 30 or 31 to February 10, 2021. Mother saw her intermittently during that time. When Brooklyn got home, she said she did not want to go to Marina's house anymore. Mother asked Brooklyn who caused the bruises in the picture and she said, "Nana did it" because she peed in the bed. Marina had hit Brooklyn before but when confronted said she hit her lightly. Marina also hit mother when she was young. Mother admitted hitting Brooklyn with her open hand on her bottom but not often. She

never used anything but her hand and never left bruises or marks. She denied telling Brooklyn she would not get toys if she spoke to the social worker. Mother believed she was benefitting from services and wanted to reunify with the children. The matter was continued to April 15, 2022, for argument and ruling.

Mother's attorney argued there was no evidence showing mother caused the injuries Brooklyn sustained in February 2021 and Brooklyn stated on numerous occasions that they were inflicted by Marina. However, if the juvenile court sustained the allegations, she asked it to provide mother reunification services. Mother participated in the services offered to her and was making progress. She interacted appropriately and lovingly with Brooklyn during visits. Further, counsel argued, it was in the children's best interests for mother to reunify with them. She raised them and they were excited to see her. Minors' counsel agreed with the department's recommendations to sustain the allegations and deny mother reunification services.

The juvenile court found Brooklyn suffered severe injury and sustained the allegations. It found her testimony regarding her trauma credible. The court stated, "[T]here came a time in her testimony that was certainly painful to the Court and I would imagine painful to everyone that was listening and watching Brooklyn where she collapsed into herself. Her entire body changed. … [H]er face changed. I don't know that I have ever seen anyone's demeanor, face and body change so rapidly and so dramatically." As to who inflicted the severe injury, the court found it believable that mother and Marina abused Brooklyn.

The juvenile court also ordered the children removed from parental custody and denied mother reunification services under section 361.5, subdivision (b)(6). The court found providing mother reunification services did not serve the children's best interests. Specifically, the court considered that Brooklyn was physically abused many times with implements and she suffered emotional trauma. She did not feel safe with mother. In addition, mother had a history of abusing her other children and it was unlikely the

6.

children could be returned to her custody without continuing supervision, given her "very long and complicated history."  The court recognized that mother was making efforts to reunify but stated it "must also consider her history."  The court denied father reunification services as recommended and set a section 366.26 hearing.

## DISCUSSION

### *Mother's Writ Petition Is Facially Inadequate for Appellate Review*

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  A parent seeking review of the juvenile court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on Judicial Council form JV-825 to initiate writ proceedings.  The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing.  (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).)  In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law.  Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother claims the juvenile court's order was erroneous based on "Many discrepancies reported in case workers notes and testimony, history, children, allegations and CPS process."  Attached to her petition are five pages of citations to the record listed by volume, page, and paragraph.  However, other than list the record citations, mother did not identify any specific legal error she claims the court committed or pinpoint evidence in the record to support her claims.  Consequently, this court cannot render a

meaningful review of the record based on the information mother provided.  Further, she appeared for oral argument and did not identify any legal errors that warrant our review.

We thus conclude mother failed to comply with rule 8.452 by asserting juvenile court error, which renders her writ petition inadequate for review.  Further, even if we were to review mother's writ petition for possible errors, we would find none.

### *Substantial Evidence Supports the Juvenile Court's Findings and Orders*

The juvenile court need not provide reunification services to a parent under section 361.5, subdivision (b)(6) if it finds by clear and convincing evidence, as relevant here, that the child was adjudged a dependent pursuant to any subdivision of section 300 as a result of the infliction of severe physical harm to the child or a sibling and the court makes a factual finding it would not benefit the child to pursue reunification services with the offending parent.  (§ 361.5, subd. (b)(6)(A).)  Severe physical harm may be based on, but is not limited to, deliberate and serious injury inflicted to or on the child's body by an act of the parent.  (*Id*. at subd. (b)(6)(C).)

Here, the juvenile court adjudged the children dependents under section 300, subdivision (a),[3] because of the serious physical harm mother inflicted on Brooklyn.  Subdivision (a) applies when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."  (§ 300, subd. (a).)  The statute specifies, "For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm."  (*Ibid*.)

---

[3]     The juvenile court also adjudged the children dependents under section 300, subdivision (b) because of the serious physical harm mother inflicted on Brooklyn.

8.

According to the evidence credited by the juvenile court, mother struck Brooklyn, causing extensive bruising on her buttocks and thighs. Although mother denied causing those particular bruises, she admitted she may have caused Brooklyn to bruise in the past. Further, mother had an extensive and serious history of abusing her children, including Brooklyn, who sustained a bump on her forehead inflicted by mother. On that evidence, the juvenile court could reasonably find that mother intentionally caused Brooklyn severe physical harm. The evidence also supported the court's finding that providing mother reunification services would not benefit the children given her history of physical abuse and coaching the children to accuse others.

Although substantial evidence would support the juvenile court's findings and orders, we dismiss mother's writ petition because it fails to comport with rule 8.452.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).